937 F.2d 1566
 Fed. Sec. L. Rep. P 96,177, 20 Fed.R.Serv.3d 557
 Wert V. FOX, C. Read Morton, Jr., and John A. Porter,
Plaintiffs-Appellants,
v.
ACADIA STATE BANK and John Doe, (whose identity is unknown
to Plaintiffs, but well known to Defendant),
Executor under the Last Will and
Testament of T. Michael
Dennis, Defendants-Appellees.
 No. 90-8551.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 9, 1991.
 
 John A. Sherrill, Glass, McCullough, Sherrill and Harrold, Scott C. Withrow, Terrence McQuade, Atlanta, Ga., for plaintiffs-appellants.
 Bryan M. White, Donald L. Beckner, Baton Rouge, La., Gary L. Seacrest, Bentley, Karesh, Seacrest Labovitz & Campbell, Atlanta, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH and CLARK, Circuit Judges and GODBOLD, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 In this Rule 11 case we affirm the district court's award of sanctions but remand for further proceedings on the proper amount of sanctions.
 
 I. BACKGROUND
 
 2
 Proceedings before the court imposed sanctions
 
 
 3
 Plaintiffs Fox, Morton and Porter purchased stock in Defendant Acadia State Bank, but they soon became dissatisfied with their investment and sued, alleging fraud under (1) Secs. 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. Secs. 77l, 77q, (2) Rule 10(b)(5), and (3) state law. Acadia moved to dismiss the federal securities law claims, and the district court granted the motions with respect to the Sec. 17(a) and 12(2) claims, holding that: (1) the Sec. 17(a) claim was foreclosed by a recent decision of this court that held that there is no private right of action under Sec. 17(a), and (2) Secs. 12(2) and 3(a)(2) of the 1933 Act expressly exempt bank securities from the Act's coverage.
 
 
 4
 The law firm in which Morton was a partner represented the plaintiffs until the court granted the motion to dismiss, after which John Sherrill, a lawyer from another firm, took over the plaintiffs' case.
 
 
 5
 While engaged in discovery on their remaining claims the plaintiffs learned that Acadia might be willing to compromise on a number of the issues that gave rise to the suit, and Sherrill contacted Acadia's counsel to discuss a settlement. Sherrill's letter to Acadia's counsel proposed "a settlement of this case under which all parties stipulate to a dismissal." Acadia responded with a letter to Sherrill in which it "accept[ed] your clients' offer to dismiss their claims as per your letter...." The parties then stipulated to an order of voluntary dismissal drafted by Acadia's lawyer providing "IT IS HEREBY ORDERED that the plaintiffs' claims against defendants ... be and are dismissed with prejudice at plaintiff's costs" and the district court dismissed the case under Federal Rule of Civil Procedure 41(a)(1)(ii).
 
 Proceedings relating to sanctions
 
 6
 Before the court entered the dismissal order Acadia filed a "Notice of Intention to Seek Sanctions at the Termination of Litigation Pursuant to Rule 11 of the Federal Rules of Civil Procedure." Three days after the court entered the dismissal order Acadia made good on its threat by moving for sanctions under Federal Rule of Civil Procedure 11[1], alleging that the plaintiffs' federal securities law claims were neither warranted by existing law nor a good faith argument for the modification or reversal of existing law. The plaintiffs contended in opposition that the parties had intended for the settlement to terminate all claims arising out of their relationship, including Acadia's Rule 11 claim. Also they denied that their federal claims were sanctionable on the grounds that they had argued for a good faith modification of existing law with regard to Sec. 17(a), and that their Sec. 12(2) and Rule 10(b)(5) claims were well founded in fact and law.
 
 
 7
 The district court rejected the plaintiffs' arguments and granted Acadia $50,000 in sanctions, holding: (1) the settlement did not cut off Acadia's Rule 11 claim because the parties did not intend for it to be an accord and satisfaction of all claims, and (2) the plaintiffs' Sec. 17(a) and 12(2) claims were sanctionable but the Rule 10(b)(5) claims were not. Although it granted the Rule 11 motion the district court expressed two reservations about Acadia's claim for sanctions. The court was concerned that Acadia's lawyer might have used the settlement discussions to set a trap for the plaintiffs, which he then sprang by filing the Rule 11 motion. The court noted in its order granting sanctions that it was troubled by possible "sandbagging" by Acadia's counsel, and that
 
 
 8
 Mr. Sherrill's allegation of deceit on the part of Acadia's counsel appears to have some merit. During the course of negotiations with regard to the voluntary dismissal, it is clear to the court that Mr. Sherrill was rather nonassertive, while [Acadia's counsel] were very deliberate and quite possibly deceptive.
 
 
 9
 It is frustrating for the court to observe that the issue of Rule 11 sanctions could easily have been addressed in the voluntary dismissal negotiations, but it was not. Acadia's counsel obviously avoided putting anything in writing regarding this matter, because they hoped to unceremoniously file the motion after the dismissal was final. The court can offer little explanation for Mr. Sherrill's apparent silence, other than his apparent misplaced trust in the "word" of [Acadia's counsel].
 
 
 10
 The court rejected Acadia's claim that it had expended $132,174.18 in attorneys' fees in opposing the Sec. 17(a) and 12(2) claims, but it did not explain how it arrived at the $50,000 figure that it awarded to Acadia.
 
 II. DISCUSSION
 
 11
 The plaintiffs contend that this court should reverse the award of sanctions to Acadia for four reasons: (1) the parties' voluntary dismissal of their claims under Rule 41(a)(1)(ii) deprived the district court of jurisdiction to impose sanctions,[2] (2) their Sec. 17(a) and 12(2) claims were not so unreasonable as to merit sanctions, (3) Acadia was not entitled to sanctions in light of the court's finding that Acadia's counsel engaged in "quite possibly deceptive" conduct, and (4) even if Acadia was entitled to sanctions, the $50,000 award was excessive. The plaintiffs must satisfy a high standard in their attempt to overturn the district court's award, for district courts have broad discretion in imposing Rule 11 sanctions, and this court will set aside an award of sanctions only if the district court abuses that discretion. See Cooter & Gell v. Hartmarx Corp., --- U.S. ----, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).
 
 
 12
 A. Reasonableness of the Sec. 17(a) and 12(2) Claims
 
 
 13
 The standard for determining whether conduct is sanctionable under Rule 11 is "reasonableness under the circumstances." Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir.1987) (en banc). Rule 11 was not intended "to chill innovative theories and vigorous advocacy that bring about vital and positive changes in the law [,]" Donaldson, 819 F.2d at 1561, "[b]ut when parties attempt to pursue civil litigation with legal theories apparently foreclosed by statute and precedent, they must do so with candor toward the court and a sense of whether their argument is appropriate and reasonable." U.S. v. Milam, 855 F.2d 739, 744 (11th Cir.1988). We agree with the district court that the plaintiffs failed to meet this standard of reasonableness and candor and affirm the district court's holding that the plaintiffs are subject to sanctions.
 
 1. Section 17(a) claim
 
 14
 This court held in Currie v. Cayman Resources Corp., 835 F.2d 780, 784-85 (11th Cir.1988) that there is no private right of action under Sec. 17(a). We decided Currie on January 12, 1988, more than six months before the plaintiffs filed their response in the district court to Acadia's motion to dismiss the Sec. 17(a) claim, and that response did not cite or otherwise discuss our decision in Currie. Rather than bringing this controlling, adverse precedent to the district court's attention, the plaintiffs represented to the court that there was a split of authority among the district courts on this question and thus that the court was free to adopt the reasoning of those courts that had held that there is a private right of action under Sec. 17(a).
 
 
 15
 The plaintiffs give two justifications for their failure to bring our decision in Currie to the district court's attention, neither of which is sufficient to discharge their obligations under Rule 11. First, they contend that they were making the sort of good faith argument for the reversal or modification of existing law that Rule 11 permits, but the district court held, and we agree, that they made "no argument, let alone a good faith argument" that this court's decision in Currie should be modified or reversed (emphasis in original); they did not refer to it at all.
 
 
 16
 Second, the plaintiffs say that because they cited district court opinions, including the district court opinion in Currie, that were contrary to their position, their failure to bring this court's decision in Currie to the district court's attention was at most a minor oversight that is not subject to sanctions. This argument is specious, because it is based on a misunderstanding of the relationship between this court and district courts in this circuit. A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court, but a district court in this circuit is bound by this court's decisions. Thus, when the plaintiffs represented to the district court that only other district courts had addressed the question of a private right of action under Sec. 17(a) after this court had provided a clear answer to that question, they misled the district court. See DeSisto College, Inc. v. Line, 888 F.2d 755, 761 (11th Cir.1989) ("[Counsel's] insistence on maintaining a legal stance untenable with our law demonstrates either an ignorance of our law, and thus inadequate research, or some intent to mislead the trial court as to the present state of this Circuit's precedent, and thus bad faith"). The plaintiffs' filing of the Sec. 17(a) claim was unreasonable, and the district court correctly determined that they were subject to Rule 11 sanctions.
 
 2. Section 12(2) claim
 
 17
 The district court dismissed the plaintiffs' Sec. 12(2) claim because that section, read in combination with Sec. 3(a)(2) of the Securities Act of 1933, 15 U.S.C. Sec. 77c(a)(2), provides a specific exemption for "any security issued or guaranteed by a bank."[3] Plaintiffs contend that they based their Sec. 12(2) claim on dicta by this court's predecessor[4] in Lehigh Valley Trust Co. v. Central National Bank of Jacksonville, 409 F.2d 989, 993 (5th Cir.1969), in which the court stated "[t]hat Congress made no express general exemption for banks under the fraud provisions ... indicates that Congress did not intend any such exemption." We agree with the district court that Lehigh Valley provides no support for the plaintiffs' position that Acadia was subject to Sec. 12(2), because that case involved a Rule 10(b)(5) action arising from a bank's fraudulent sale of loan participation agreements, and neither the court's holding nor its dicta are relevant to a case involving a bank's sale of its own stock. The plaintiffs' decision to proceed on a theory that was specifically precluded by the statute and unsupported by case law was unreasonable.
 
 B. Amount of Sanctions
 
 18
 Although we affirm the district court's decision to impose Rule 11 sanctions, we vacate the award of $50,000 and remand for further proceedings so that the district court can give additional consideration to the amount of sanctions that it should impose. The "central goal" of Rule 11 is to deter vexatious and frivolous litigation, Cooter & Gell, 110 S.Ct. at 2454, and to achieve that goal a court may impose sanctions that compensate those injured by unreasonable litigation practices, or punish those who engage in such practices, or both. Donaldson, 819 F.2d at 1556. Thus, in determining the amount of sanctions to impose a district court may take into account compensation of other parties and punishment of the offender, but deterrence remains the touchstone of the Rule 11 inquiry. See Advisory Committee Note to Rule 11.
 
 
 19
 Rule 11 permits a court to deter unreasonable conduct by imposing:
 
 
 20
 an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee
 
 
 21
 (emphasis added). The rule limits a court that imposes sanctions based solely on the opposing party's attorney's fees to a reasonable fee, even if that amount is smaller than the opposing party's actual expenses. See Schwarzer, Sanctions under the New Federal Rule 11--A Closer Look, 104 F.R.D. 181, 203 ("A party having vigorously resisted a baseless claim may therefore find that the court, in making an award, will consider its expenditures to have been excessive"). Furthermore, Rule 11 does not create an absolute entitlement to even reasonable attorney's fees if the court determines that the rule's central goal of deterrence may be achieved by a lesser sanction. The reverse is also true, for the rule permits a court to impose sanctions greater than the moving party's attorney's fees if the court in its discretion determines that such sanctions are required to deter further unreasonable conduct. See Samuels v. Wilder, 906 F.2d 272, 276 (7th Cir.1990) ("Persons required to pay sanctions have no entitlement to a perfect match between the award and the [opposing party's] legal fees, and the discretion the district judge possesses in deciding whether the conduct is sanctionable extends as well to the selection of the sanction.")
 
 
 22
 In a given case a wide range of sanctions will fall within a district court's discretionary powers under Rule 11. The order granting Acadia's motion for sanctions did not set out the court's rationale for imposing sanctions, nor did it analyze the validity of Acadia's request for attorney's fees. Since the court found "some merit" in plaintiffs' allegations of deceit by Acadia's counsel, and possible deception, on remand the district court should explain why the amount of sanctions that it awards will deter unreasonable conduct by both parties. If the court determines that it can best achieve deterrence by requiring the plaintiffs to compensate Acadia for all or part of the attorney's fees it expended defending against the plaintiffs' sanctionable claims, the court should allow plaintiffs to challenge the validity and reasonableness of any figures relating to fees that Acadia puts forward and make appropriate findings on the record. We express no opinion on the amount of sanctions that the court should award, leaving that determination to the sound discretion of the district court, which is familiar with both parties and their conduct during this case.
 
 
 23
 AFFIRMED in part, VACATED and REMANDED in part.
 
 
 
 [1]
 Rule 11 provides in relevant part:
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 [2]
 The Supreme Court held in Cooter & Gell v. Hartmarx Corp., --- U.S. ----, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990), that a plaintiff's voluntary dismissal of an action under Rule 41(a)(1)(i) does not deprive a district court of jurisdiction to impose Rule 11 sanctions. Once burned, the plaintiffs take great care in their arguments on appeal to acknowledge this adverse precedent, but they advance no basis for distinguishing a plaintiff's voluntary dismissal under Rule 41(a)(1)(i) from stipulated dismissal under Rule 41(a)(1)(ii). We find their argument without merit, and we hold that the stipulated dismissal did not deprive the district court of jurisdiction to impose Rule 11 sanctions
 
 
 [3]
 Section 12(2) applies to:
 Any person who--...
 (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section )....
 15 U.S.C. Sec. 77l(2) (emphasis added). The relevant portion of section 3(a)(2) provides:
 (a) Except as hereinafter expressly provided, the provisions of this subchapter shall not apply to any of the following classes of securities; ...
 (2) ... any security issued or guaranteed by any bank....
 15 U.S.C. Sec. 77c(a)(2).
 
 
 [4]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981